UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | Civil Action No.   4:18-CV-2705 |
| v. | § § | |
| MAXUM INDEMNITY COMPANY; and U S GLOBAL SECURITY INCORPORATED, | § § § § | |
| Defendants. | § | JURY |

**PLAINTIFF PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

Plaintiff, Princeton Excess and Surplus Lines Insurance Company ("PESLIC"), by and through its undersigned counsel, for its Complaint against Defendants, Maxum Indemnity Company ("Maxum") and U S Global Security Incorporated ("US Global"), alleges as follows:

**NATURE OF THE ACTION**

1.  This is an action for declaratory relief, equitable contribution, and equitable subrogation, brought for the purpose of resolving an actual controversy between the parties regarding their respective purported duties to defend and indemnify D. Houston, Inc. dba Treasures ("Treasures") and Jason Brannen ("Brannen") in an underlying civil lawsuit pending in the 133rd Judicial District Court of Harris County, Texas, Cause No. 2017-71771 (the "Underlying Lawsuit").  Despite the fact that Maxum and US Global each have an independent duty to defend (and ultimately indemnify) Treasures and Brannen with respect to the claims asserted in the Underlying Lawsuit, PESLIC has to date defended such parties alone, without participation from either defendant, whose obligations apply on a primary and non-contributory basis.

## THE PARTIES AND CITIZENSHIP

2.  PESLIC is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Princeton, New Jersey. PESLIC is authorized to transact business within the State of Texas as a surplus lines insurer.

3.  Upon information and belief, Maxum is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Alpharetta, Georgia.

4.  Upon information and belief, US Global is a corporation organized and existing under the laws of the state of Texas, with its principal place of business in Houston, Texas.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a), because complete diversity exists between the parties, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.  Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred within this district, and the Underlying Lawsuit is pending within this district.

## THE UNDERLYING LAWSUIT

7.  The Underlying Lawsuit arises out of injuries allegedly sustained by a patron of Treasures, a gentleman's club in Houston, Texas, who was allegedly assaulted and subsequently arrested in an incident at the club on September 23, 2017.

8.  On October 24, 2017, the patron, Wesley O'Neill ("O'Neill"), filed suit against Treasures and Brannen, the club manager.

9. US Global was added as a party defendant in the Underlying Lawsuit in the Third Amended Petition filed on March 27, 2018.

10. On April 5, 2018, O'Neill filed a Fourth Amended Petition.  (A true and correct copy of the Fourth Amended Petition is attached hereto as Exhibit 1.)

11. In the Fourth Amended Petition, it is alleged that O'Neill, a resident of Scotland visiting Houston on business, went to Treasures and was greeted by a woman who escorted him to a table.

12. O'Neill alleges that he agreed to purchase a bottle of alcohol for $300, in exchange for the woman dancing for him in an upstairs "VIP" area of the club.

13. The woman selected a bottle of champagne, and they proceeded upstairs where she danced for O'Neill.

14. After approximately 30 minutes, the woman allegedly advised O'Neill he owed a total of $1,500.  O'Neill disputed the amount, reminding her he was told the cost would be $300.

15. The woman allegedly continued to demand $1,500, and then summoned Brannen and two club bouncers.

16. The men allegedly surrounded O'Neill as he continued to demand explanation of the bill.  Brannen allegedly told O'Neill he was not going to get an explanation and began poking O'Neill in the chest, insisting on payment.

17. Brannen then allegedly grabbed O'Neill by his shirt collar and struck him in the left eye with a sharp object. The blow allegedly shattered O'Neill's eye socket, fractured another facial bone, and caused a deep laceration above his left eye.  O'Neill allegedly fell to the ground and Brannen continued to beat him.

18. According to the Fourth Amended Petition, once the assault ended, O'Neill demanded that police be called. O'Neill claims that US Global security personnel then handcuffed him and took him outside the club to wait for the police. When police officers arrived, O'Neill was allegedly placed in the back of the squad car.

19. O'Neill claims he was charged with theft of service at Brannen's request and transported to the Harris County Jail, where he was held for three days.

20. O'Neill alleges that, once he was released and able to hire an attorney, the charge against him was quickly dismissed for lack of probable clause. However, O'Neill's doctors allegedly advised against air travel due to his injury.

21. As a result, O'Neill's return to Scotland was allegedly delayed by nearly a month.

22. Based on these allegations, O'Neill asserts causes of action against Treasures, Brannen, and US Global for negligence, false imprisonment, and malicious prosecution. O'Neill also alleges negligent hiring against US Global and Treasures, and a claim for infliction of bodily injury against Treasures and Brannen, among other causes of action.

23. The Fourth Amended Petition alleges that O'Neill's injury caused permanent damage to his left eye. In addition to his physical injuries, O'Neill alleges the defendants' wrongful conduct resulted in his three-day detention, harmed his reputation, caused emotional distress, and required that he incur defense costs.

24. O'Neill seeks to recover his actual damages, as well as exemplary damages.

## THE SECURITY SERVICE CONTRACT

25. On September 27, 2010, Treasures and US Global entered into a Security Service Contract (the "Security Contract"), which sets forth the terms and conditions of US Global's

retention as a security services provider for Treasures and its parking lot areas. (A copy of the Security Contract is attached hereto as Exhibit 2.)

26. Pursuant to the Security Contract, US Global agreed to provide security guard services and patrols to the area immediately outside the premises of the club, such as the front door area and entryway, the periphery of the building, the parking lot, and the remote parking lot areas.

27. Under the section titled "Services To Be Provided," the Security Contract contemplates that US Global personnel would also be required to perform services *inside* the building upon specific request for assistance by Treasures' managerial staff.

28. Under the section titled "Description Of Services," the Security Contract states that US Global's personnel will observe, monitor, and control any potentially or actually hazardous or dangerous conditions and activities, including certain conditions and activities occurring inside the club.

29. Section 5 of the Security Contract contains the relevant insurance requirements, and provides, in pertinent part, as follows:

> 5. INSURANCE: … [US Global] shall also keep in force, in [*sic*] a policy of general liability insurance acceptable to [Treasures], which includes but is not limited to, coverage for false arrests, detention, assault and battery or imprisonment, malicious prosecution, liable [*sic*], slander, defamation of character or violation of right of privacy, as well as bodily injury to any persons or property damage, with a limit of at least $1 million per occurrence, $2 million aggregate. [US Global's] insurance shall not seek contribution and shall include a waiver of subrogation. All such [US Global] insurance shall cover and include all contractually assumed liability of [US Global] under this Contract and shall be primary and noncontributory with respect to any other insurance maintained by [Treasures] and [Treasures'] insurance shall not be responsible for any defense or indemnity until the primary insurance is exhausted; notwithstanding any "other insurance" clauses to the contrary. … **[US Global] agrees to take all necessary steps so that, prior to the beginning of the services, and for the entire term of the services, said general liability policies of insurance shall name [Treasures], and [Treasures'] landlord, and landlord for any remote parking lot, their respective officers, directors and employees, as additional insureds …** [Emphasis in Security Contract.]

5

30. The Security Contract further requires US Global to fully defend and indemnify Treasures and Brannen against claims arising in any manner from the acts or omissions of US Global and/or its personnel. In particular, Section 6 provides:

> 6. INDEMNIFICATION: Separate and apart from any other obligations contained herein, [US Global] agrees to defend, indemnify and save [Treasures], [Treasures'] landlord, the parking lot landlord, and their respective directors, officers and employees, harmless [*sic*] (a) any breach by [US Global] of the terms of this Agreement, (b) from and against any and all incidents, claims, actions, damages, liability and expense, including attorneys' fees, in connection with loss of life, personal injury and/or damage to property arising in any manner from the acts or omissions of [US Global] or its personnel, employees or agents, and/or (c) from any and all claims of sole, joint or contributing negligent or intentional acts or omissions of [US Global] and/or its personnel, employees or agents, even where there is also a claim of a negligent act or omission of [Treasures] or their agents that allegedly contributed in part to the alleged harm. …

## THE POLICIES

### A. The PESLIC Policy

31. PESLIC issued policy number 1RA3GL0000179-02 to D. Texas Investments, Inc. for the policy period November 9, 2016 to November 9, 2017 (the "PESLIC Policy"). (A true and correct copy of the PESLIC Policy is attached hereto as Exhibit 3.)

32. The PESLIC Policy provides Commercial General Liability insurance under Form CG 00 01 04 13, and contains liability limits of $1 million each occurrence and personal and advertising injury, $2 million general aggregate, $1 million assault and battery, and $1 million assault and battery aggregate.

33. The PESLIC Policy provides the following, in relevant part:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*   \*   \*

**4.  Other Insurance**

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

6

a.  **Primary Insurance**

This insurance is primary except when Paragraph **b**. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c**. below.

b.  **Excess Insurance**

**(1)**  This insurance is excess over:

\*      \*      \*

**(b)**  Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)**  When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)**  When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)**  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)**  The total of all deductible and self-insured amounts under all that other insurance.

\*      \*      \*

B.  **The Maxum Policy**

34.  Maxum issued policy number GLP-6021221-05 to US Global for the policy period January 20, 2017 to January 20, 2018 (the "Maxum Policy"). (A copy of the Maxum Policy is attached hereto as Exhibit 4.)

35. The Maxum Policy provides Commercial General Liability insurance under Form P004 (12/2013), and contains liability limits of $1 million each occurrence and personal and advertising injury, and $2 million general aggregate.

36. The Maxum Policy contains the following relevant policy provisions:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the Insured becomes legally obligated to pay as "damages" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those "damages." …

    \*   \*   \*

2. **Exclusions**

    This insurance does not apply to:

    \*   \*   \*

    b. **Contractual Liability**

        "Bodily injury" or "property damage" for which the Insured is obligated to pay "damages" by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "damages":

        1) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

        2) That the Insured would have in the absence of the contract or agreement.

        \*   \*   \*

**COVERAGE B. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

    a.  We will pay those sums that the Insured becomes legally obligated to pay as "damages" because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those "damages." …

    \*   \*   \*

2. **Exclusions**

    This insurance does not apply to:

    a.  **Personal Injury Or Advertising Injury**
        "Personal injury" or "advertising injury":

    \*   \*   \*

    (11) For which the Insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for "damages" that the Insured would have in the absence of the Contract or agreement …

    \*   \*   \*

**SECTION V – DEFINITIONS**

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

    \*   \*   \*

6. "Damages" means compensation, only in the form of money, for a person or entity who claims to have suffered "bodily injury," "personal injury" or "advertising injury"…

    \*   \*   \*

10. "Insured contract" (as amended by endorsement) means:

    \*   \*   \*

    f.  That part of any other contract or agreement pertaining to your business … under which you assume the tort liability of another party to pay "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

9

\*     \*     \*

15. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

\*     \*     \*

### ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

**Name of Additional Insured Person(s) or Organization(s):**

Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement prior to the date of loss that such person or organization be added as an additional insured on your policy.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by:

   1. Your acts or omissions; or
   2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

\*     \*     \*

### PRIMARY OR NONCONTRIBUTORY CLAUSE ENDORSEMENT

Coverage provided by this policy to the additional insured(s), as provided by the attachment of the endorsement CG 20 10 07 04 – ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION shall be primary and any other insurance maintained by the additional insured(s) shall be excess and non-contributory;

- but only as respects any claim or liability determined to be caused in whole or in part by the Named Insured,

- and only if required of the Named Insured by a written contract.

### **TENDERS OF DEFENSE AND INDEMNITY TO MAXUM AND US GLOBAL**

37. By letter dated December 12, 2017, PESLIC, through its authorized third party claims administrator, York Risk Services Group ("York"), tendered defense and indemnity of

Treasures and Brannen in the Underlying Lawsuit to US Global. (A copy of the December 12, 2017 tender correspondence is attached hereto as Exhibit 5.)

38. US Global rejected PESLIC's tender on December 22, 2017. (A copy of the December 22, 2017 handwritten tender rejection is attached hereto as Exhibit 6.)

39. By letter dated March 20, 2018, PESLIC, through York, tendered defense and indemnity of Treasures and Brannen in the Underlying Lawsuit to Maxum. (A copy of the March 20, 2018 tender correspondence is attached hereto as Exhibit 7.)

40. Maxum rejected PESLIC's tender on May 15, 2018. (A copy of the May 15, 2018 tender rejection is attached hereto as Exhibit 8.)

41. Subsequent correspondence exchanged between counsel for PESLIC and Maxum did not resolve the dispute. (Copies of letters dated June 7, 2018 and June 13, 2018 between Jordon S. Steinway and Joseph A. Ziemianski are attached hereto as Group Exhibit 9.)

## COUNT I – DECLARATORY RELIEF
## (Against Maxum)

42. PESLIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

43. An actual, present, and justiciable controversy has arisen and now exists between PESLIC on the one hand and Maxum on the other hand, concerning their respective rights, duties, and obligations under the insurance policies issued by each of them.

44. In particular, upon information and belief, Maxum denies the following:

   a. Treasures and Brannen qualify as additional insureds under the Maxum Policy pursuant to the Additional Insured endorsement;

   b. The allegations of the Fourth Amended Petition filed in the Underlying Lawsuit create the potential that Treasures and Brannen will be liable for damages covered under the Maxum Policy;

   c. Maxum has a duty to defend Treasures and Brannen against the claims,

11

      demands, actions, and causes of action asserted against those parties in the Underlying Lawsuit;

d. The Maxum Policy is intended to fund the obligation contained in Section 6 of the Security Contract, which is an "insured contract" within the meaning of the Maxum Policy;

e. Maxum's defense and indemnity obligations under the Maxum Policy are primary to, and non-contributory with, PESLIC's obligations under the PESLIC Policy;

f. Maxum has an equitable duty and responsibility to pay a fair and proportionate share of the costs of defense incurred on behalf of Treasures and Brannen in the Underlying Lawsuit;

g. PESLIC has made a compulsory payment or other discharge of more than its fair share of the purported common obligation or burden of defending Treasures and Brannen in the Underlying Lawsuit; and

h. PESLIC is entitled to recoupment from Maxum of all defense costs and expenses that it has paid on behalf of Treasures and Brannen in the Underlying Lawsuit.

45. PESLIC asserts and contends that declaratory judgment is both necessary and proper at this time for the Court to determine the respective rights and liabilities of the parties regarding their purported obligations to defend and indemnify Treasures and Brannen in connection with the Underlying Lawsuit.

## COUNT II – EQUITABLE CONTRIBUTION
### (Against Maxum)

46. PESLIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

47. The PESLIC Policy and Maxum Policy insure the same parties, the same interest, and the same risk.

48. PESLIC has agreed to participate in the defense of Treasures and Brannen with respect to claims asserted against those parties in the Underlying Lawsuit, subject to a full and complete reservation of rights.

12

49. Treasures and Brannen each qualify as additional insureds under the Maxum Policy.

50. The allegations made, pleaded, or otherwise asserted against Treasures and Brannen in the Underlying Lawsuit set forth claims for damages potentially covered under the Maxum Policy.

51. Accordingly, Maxum is obligated to defend Treasures and Brannen in the Underlying Lawsuit under the Maxum Policy, which policy reflects Maxum's agreement to undertake the duty to defend suits seeking damages because of "bodily injury" and "personal injury" to which the insurance applies.

52. To date, Maxum has failed and refused to defend Treasures and Brannen, and/or has failed to contribute a full and equitable share toward PESLIC's costs of defending such parties, which have been incurred and are being incurred in connection with the Underlying Lawsuit.

53. By reasons of Maxum's failure to discharge its obligations, and to equitably participate in the defense of Treasures and Brannen, PESLIC has incurred and/or paid, and will incur and/or pay, more costs than it would have, had Maxum agreed to defend and/or contribute a full and equitable share of the defense of Treasures and Brannen in performance of its due and owing obligations under the Maxum Policy.

54. Maxum's failure to discharge its obligations under the Maxum Policy is wrongful, and has caused an inequitable result, in that PESLIC is paying and has paid more than its fair share of the costs of the purported common obligation or burden of defending Treasures and Brannen in the Underlying Lawsuit.

55. Because of Maxum's wrongful failure to discharge its obligations under the Maxum Policy, PESLIC is entitled to an award of equitable contribution, to reimburse it for costs equivalent to Maxum's fair and equitable proportionate share of the total costs of defense incurred in connection with the claims against Treasures and Brannen in the Underlying Lawsuit, with interest thereon at the prescribed legal rate.

## COUNT III – EQUITABLE SUBROGATION
### (Against US Global)

56. PESLIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

57. Pursuant to the Security Contract, US Global is obligated to defend and indemnify Treasures and its employees (including Brannen) with respect to incidents, claims, actions, damages, liability and expense, including attorneys' fees, in connection with personal injury arising from the acts or omissions of US Global or its personnel, employees or agents, even where there is also a claim of a negligent act or omission of Treasures or its agents that allegedly contributed in part to the alleged harm.

58. The allegations made, pleaded, and/or otherwise asserted against Treasures and Brannen in the Underlying Lawsuit set forth claims for damages arising out of the acts or omissions of US Global and its personnel, employees or agents, which triggers US Global's contractual duty to defend and indemnify.

59. Despite being obligated to defend and indemnify Treasures and Brannen in connection with the Underlying Lawsuit, US Global has failed and refused to fulfill its contractual obligation to do so.

60. In order to protect the interests of Treasures and Brannen, PESLIC agreed to participate in the defense of Treasures and Brannen with respect to the claims asserted against

14

those parties in the Underlying Lawsuit, and PESLIC has, to date, paid $19,105.35 towards fees and costs incurred in connection with the defense.

61. Such sums paid by PESLIC represent the involuntary payment of a debt primarily owed by US Global which, in equity, should be paid by US Global.

62. Treasures and Brannen have an existing, assignable cause of action against US Global.

63. The indemnity provision in the Security Contract is valid and enforceable.

64. PESLIC has incurred, and will continue to incur, damages by virtue of its payment of defense fees and costs incurred on behalf of Treasures and Brannen. PESLIC is entitled to recover such payments from US Global, because PESLIC is subrogated to the rights of Treasures and Brannen, which rights include their contractual entitlement to defense and indemnification from US Global for claims asserted against such parties in the Underlying Lawsuit.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Princeton Excess and Surplus Lines Insurance Company, respectfully requests that this Court enter judgment in its favor as follows:

**With respect to causes of action against Maxum:**

1. For a declaration that Treasures and Brannen qualify as additional insureds under the Maxum Policy pursuant to the Additional Insured endorsement;

2. For a declaration that the allegations of the Fourth Amended Petition filed in the Underlying Lawsuit create the potential that Treasures and Brannen will be liable for damages covered under the Maxum Policy;

3. For a declaration that Maxum has a duty to defend Treasures and Brannen against the claims, demands, actions, and causes of action asserted against those parties in the Underlying Lawsuit;

4. For a declaration that the Maxum Policy is intended to fund the obligation

contained in Section 6 of the Security Contract, which is an "insured contract" within the meaning of the Maxum Policy;

5. For a declaration that Maxum's defense and indemnity obligations under the Maxum Policy are primary to, and non-contributory with, PESLIC's obligations under the PESLIC Policy;

6. For a declaration that Maxum has an equitable duty and responsibility to pay a fair and proportionate share of the costs of defense incurred on behalf of Treasures and Brannen in the Underlying Lawsuit;

7. For a declaration that PESLIC has made a compulsory payment or other discharge of more than its fair share of the purported common obligation or burden of defending Treasures and Brannen in the Underlying Lawsuit;

8. For a declaration that PESLIC is entitled to recoupment from Maxum of all defense costs and expenses that it has paid on behalf of Treasures and Brannen in the Underlying Lawsuit;

9. For general damages in an amount to be proven at trial;

10. For prejudgment interest;

11. For costs of suit herein; and

12. For such other and further relief as this Court deems just and appropriate.

**With respect to the cause of action against US Global:**

1. For a declaration that US Global, pursuant to the Security Contract, had and has a duty to defend, indemnify, and hold harmless Treasures and Brannen against the claims, demands, actions, and causes of action asserted against such parties in the Underlying Lawsuit;

2. For a declaration that US Global breached the Security Contract by failing or refusing to defend Treasures and Brannen against claims in the Underlying Lawsuit;

3. For a declaration that PESLIC has an existing, assignable cause of action against US Global;

4. For a declaration that the indemnity provision in the Security Contract is valid and enforceable;

5. For all expenses including, without limitation, attorneys' fees incurred by Treasures and Brannen and paid by PESLIC, in the investigation and defense of the Underlying Lawsuit;

16

6. For all expenses including, without limitation, attorneys' fees incurred by PESLIC herein to enforce the Security Contract;

7. For general damages in an amount to be proven at trial arising out of US Global's breach of its contractual obligations under the Security Contract; and

8. For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, Princeton Excess and Surplus Lines Insurance Company, hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b)

Dated: August 6, 2018                                    Respectfully submitted,

/s/ Natasha N. Taylor
Natasha N. Taylor
Texas Bar No. 24071117
Federal Bar No. 1102665
*Attorney-in-Charge*
WRIGHT CLOSE & BARGER, LLP
One Riverway, Suite 2200
Houston, TX 77056
Telephone: (713) 572-4321
Email: taylor@wrightclosebarger.com
*Counsel for Princeton Excess and Surplus Lines Insurance Company*

Jordon S. Steinway\*
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
Telephone: (312) 762-3169
Email: jsteinway@batescarey.com
\**Pro Hac Vice Admission to Be Filed*

*Counsel for Princeton Excess and Surplus Lines Insurance Company*