United States District Court
Southern District of Texas
**ENTERED**
September 24, 2019
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| PRINCETON EXCESS AND | § | |
| SURPLUS LINES INSURANCE CO., | § | |
| Plaintiff, | § | |
|  | § | |
| v. | § | CIVIL ACTION NO. H-18-2705 |
|  | § | |
| US GLOBAL SECURITY | § | |
| INCORPORATED, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

By Order [Doc. # 32] entered March 5, 2019, the Court referred all potentially

dispositive motions to United States Magistrate Judge Dena Palermo for a Report and

Recommendation.  On August 5, 2019, Magistrate Judge Palermo issued her Report

and Recommendation ("R&R") [Doc. # 38], addressing the Rule 12(c) Motion for

Judgment on the Pleadings [Doc. # 19] filed by Plaintiff Princeton Excess and Surplus

Lines Insurance Company ("Princeton"), the Motion for Summary Judgment [Doc.

# 22] filed by Defendant Maxum Indemnity Company ("Maxum"), and Maxum's

Motion for Summary Judgment on US Global Security, Inc.'s Crossclaims [Doc.

# 24].  The Magistrate Judge recommended that this Court hold that Treasures and

Brannen are additional insureds under Maxum's insurance policy, and that the

"Designated Operations Exclusion" ("Exclusion") in Maxum's policy applies.  The

Magistrate Judge recommended further that an exception to the Exclusion applies because the allegation that the plaintiff in the underlying state court lawsuit was taken "outside" created a reasonable inference that he was taken to a parking lot where security operations occurred.  The Magistrate Judge recommended also that Princeton is entitled to contribution from Maxum for the defense costs in the underlying state court lawsuit.  Regarding the crossclaims asserted against Maxum by US Global Security Inc. ("Global"), the Magistrate Judge recommended a ruling that Maxum owes a duty to defend Princeton's insureds in the underlying state court lawsuit, and that Maxum owes no duty to defend Global against Princeton's claims against it in this lawsuit.  Lastly, the Magistrate Judge recommended denying Maxum's motion for summary judgment on Global's crossclaim for indemnity as premature, citing *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004).

Maxum filed timely Objections [Doc. # 41] to the R&R.  Maxum objects to the Magistrate Judge's recommendation that Maxum owes a duty to defend Princeton's insureds in the underlying state court lawsuit, and to the recommendations that flow from the duty to defend recommendation.  Princeton filed a Response [Doc. # 42], and Maxum filed a Reply [Doc. # 43].  No other objections to the R&R were filed.

The Court has reviewed the R&R, as well as Maxum's Objections.  The Court has applied relevant legal authorities, and has made a *de novo* review of those portions

of the report or specified proposed findings or recommendations to which Maxum objected.  *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1); *Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 347 (5th Cir. 2012).  The Court has not conducted a complete *de novo* review of those recommendations to which no objection was filed, but has verified that the recommendations are legally and factually sound.  *See* 28 U.S.C. § 636(b)(1).

The Court adopts the R&R in part.  The Court applies the well-established "eight-corners" rule,[1] sustains Maxum's Objections, and does not adopt the recommended ruling that Maxum has a duty to defend in the underlying state court lawsuit.[2]  Because this Court holds that Maxum does not owe a duty to defend in the

---

[1]  As discussed more fully below, under the eight-corners rule, the Court limits itself to considering the "facts alleged within the four corners of the petition (or complaint) in the underlying lawsuit," and "the language within the four corners of the insurance policy."  *Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 446 (5th Cir. 2018) (quoting *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014)); *see also Century Sur. Co. v. Seidel*, 893 F.3d 328, 333 (5th Cir. 2018), *cert. denied*, __ U.S. __, 139 S. Ct. 1326 (2019); *City of College Station, Tex. v. Star Ins. Co.*, 735 F.3d 332, 336 (5th Cir. 2013).  The Court then determines whether "the facts alleged present a matter that could potentially be covered by the insurance policy." *Lyda Swinerton*, 903 F.3d at 446.

[2]  The Fifth Circuit recently certified to the Texas Supreme Court the question "Is the policy-language exception to the eight-corners rule articulated in *B. Hall Contracting Inc. v. Evanston Ins. Co.*, 447 F. Supp. 2d 634 (N.D. Tex. 2006), a permissible exception under Texas law?"  *State Farm Lloyds v. Richards*, __ F. App'x __, 2019 WL 4267354, *3 (5th Cir. Sept. 9, 2019).  In the *Richards* case, the Fifth Circuit noted that the Texas Supreme Court has never expressly adopted the exception to the eight-corners rule.  *See id.  See* footnote 5, *infra*.

underlying state court lawsuit, Princeton is not entitled to judgment on its contribution claim, and Maxum is entitled to summary judgment on Princeton's claims against it. Maxum is also entitled to summary judgment on the crossclaim by Global asserting that Maxum owes it a duty to defend in this federal lawsuit. The Magistrate Judge correctly concluded that Maxum's request for summary judgment on the crossclaim for indemnity is premature.

## I.    **BACKGROUND**

The Magistrate Judge accurately set forth the background of this dispute in her R&R. *See* R&R [Doc. # 38], pp. 2-7. Princeton issued a Commercial General Liability insurance policy ("Princeton Policy") to D. Texas Investments, Inc. The Princeton Policy provides insurance coverage to the men's club Treasures and its employees, including its manager, Jason Brannen. *See* Princeton Policy, Exh. 3 to Complaint [Doc. # 1]. Princeton's Policy provides insurance that is excess over any other primary insurance policy available to Princeton's insureds covering liability for damages arising out of the premises or operations for which they are additional insureds through an endorsement to the other policy. *See id.* at ECF p. 58. The dispute in this case involves whether the Princeton Policy is the primary insurance or is excess insurance for the underlying state court lawsuit.

D. Houston, Inc. d/b/a Treasures entered into a Security Service Contract ("Service Contract") with Global for "security guard protection services" for Treasures and its parking lot areas. *See* Security Contract, Exh. 2 to Complaint, p. 1. The Security Contract required Global to provide security services and patrols for the "area immediately outside the premises of the Nightclub, such as the front door area and entry way, the periphery of the building, the parking lot and the remote parking lot areas." *Id.* Global was not required to provide security services inside Treasures, other than in the door area, "unless specific assistance is requested by managerial staff of Nightclub." *Id.* Global agreed to obtain a general liability insurance policy with Treasures and its employees as additional insureds.[3] *See id.* at 2.

Maxum issued a Commercial General Liability Insurance Policy for Global, Policy Number GLP-6021221-05 (the "Policy"). The Policy contains an Additional Insured endorsement, which provides additional insured status for:

---

[3] The Court discusses the Security Contract only as background, and because it is the contract that requires Global to obtain a general liability insurance policy with Treasures and its employees as additional insureds. The Court notes that the Service Contract requires Global to provide security services at various areas outside the Treasures building including, but not limited to, parking lots. This provision clarifies that there are locations outside Treasures that are not within a parking lot. The Service Contract, however, is beyond the eight corners that the law currently permits the Court to consider. Therefore, for purposes of the coverage analysis, the Court's review is limited to the Maxum insurance policy and the Fourth Amended Petition in the underlying state court lawsuit.

> Any person or organization for whom [Global is] performing operations when [Global] and such person or organization have agreed in writing in a contract or agreement prior to the date of loss that such person or organization be added as an additional insured on [Global's] policy.

Policy, Exh. 4 to Complaint [Doc. # 1], ECF p. 44. The parties all agree that Princeton's insureds – Treasures, and its manager, Jason Brannen – qualify as additional insureds under this endorsement to the Policy.

The Policy provides coverage for "those sums that the Insured becomes legally obligated to pay as "damages" because of "bodily injury" or "personal injury" to which the Policy applies. *See* Policy, ECF pp. 16, 22. The Policy applies to "bodily injury" that is caused by an occurrence that takes place in the "coverage territory" and during the Policy period. *See id.* at ECF p. 16. The Policy applies also to "personal injury" caused by an offense arising out of the insured's business, with certain exclusions, if the offense was committed in the "coverage territory" during the Policy period. *See id.* at ECF p. 22. The Policy defines "personal injury" to mean an injury, other than "bodily injury," arising out of certain offenses, including false imprisonment and malicious prosecution. *See id.* at ECF p. 31.

The Policy provides that Maxum has the "duty to defend the Insured against any 'suit' seeking those 'damages,'" but has no duty to defend the Insured against a suit seeking damages to which the Policy does not apply. *See id.*

The Policy contains a "Designated Operations Exclusion" ("Exclusion") that states:

> This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the operations shown in the Schedule.

Schedule

Description of Operation:

> Any Work at or in Bars, Restaurants, Taverns or any other Establishments Selling or Providing Alcoholic Beverages.

*Id*.

Significantly, the Designated Operations Exclusion states also that it "does NOT apply to Parking Lot Security at Gentlemen's Clubs." *Id.* (emphasis in original). This provision creates an exception ("Exception") to the Designated Operations Exclusion.

Wesley O'Neill, an individual residing in Scotland, filed a lawsuit in Texas state court, *Wesley O'Neill versus D. Houston, Inc. d/b/a Treasures, et al.* ("Underlying Lawsuit"). In the Underlying Lawsuit, O'Neill alleges that he was in Houston in September 2017 for business, and an Uber driver suggested taking him to Treasures. O'Neill alleges that he had "never been to a 'men's club' in the United States and, curious to see what one was like, he agreed." *See* Fourth Amended

Petition, Exh. B to Maxum's Motion for Summary Judgment, p. 2.  O'Neill alleges that while he was at Treasures, a woman invited him "upstairs," where she said O'Neill would buy a bottle for the two of them to share and the woman would dance for him.  *See id.* at 3.  O'Neill alleges that he was charged $1,500.00 for a bottle of champagne for which he expected to pay $300.00.  *See id.*  O'Neill alleges that Treasures manager Brannen insisted O'Neill pay the full price, began "poking" O'Neill, grabbed him by his shirt collar, and "using a sharp object, slugged Mr. O'Neill in his left eye, shattering his eye socket, fracturing another facial bone, and causing a deep gash above his left eye."  *See id.*  O'Neill alleges that Brannen continued to beat him.  *See id.* at 4.  O'Neill alleges further that he insisted that the police be called.  *See id.*

O'Neill alleges that Global personnel handcuffed him and "took him outside to wait for the police."  *Id.*  O'Neill alleges that the police placed him in the back of a squad car and "went to talk to Brannen."  *See id.*  O'Neill alleges that, at Brannen's request, he was charged with "theft of service" and was taken to the Harris County Jail where he remained for almost three days.  *See id.*  The charge against him was later dismissed.

O'Neill alleges that he was required to delay his return to Scotland for almost a month because the pressure from flying would be extremely dangerous for his eye. *See id.* He alleges further that the damage to his eye is permanent. *See id.* at 5.

O'Neill filed the Underlying Lawsuit asserting causes of action for infliction of bodily injury, false imprisonment, malicious criminal prosecution, negligence, negligent hiring, a violation of the Texas Deceptive Trade Practices Act, and fraud. By letter dated March 20, 2018, Princeton "tendered defense and indemnity of Treasures and Brannen in the Underlying Lawsuit to Maxum." *See* Complaint [Doc. # 1], ¶ 39. Maxum responded that it did not owe a duty to defend or indemnify in the Underlying Lawsuit. *See id.*, ¶ 40. Princeton and Maxum each seek summary judgment on whether Maxum owes a duty to defend Treasures and Brannen in the Underlying Lawsuit. Additionally, Maxum seeks summary judgment on Global's crossclaims against it.

## II.   **APPLICABLE LEGAL AUTHORITIES**

The Magistrate Judge accurately stated the applicable legal principles, including the legal standards for a Rule 12(c) judgment on the pleadings (R&R at 7-8) and for summary judgment (R&R at 8-9).

The Magistrate Judge also accurately stated the governing Texas law regarding an insurer's duty to defend. *See* R&R at 10-12. An insurer owes its insured a duty to

defend "if a plaintiff's factual allegations potentially support a covered claim." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008).  Under Texas law, the insured has the burden to establish coverage under the terms of the policy.  *See Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 201 (5th Cir. 2014).  If the insured establishes coverage, then the insurer can avoid liability by proving that the injury is within a policy exclusion.  *See id.*  The burden then shifts back to the insured to show that an exception to the exclusion applies to "bring the claim back within coverage."  *Id.* at 202.  Therefore, in this case, Princeton as representative of additional insureds Treasures and Brannen, has the burden to establish that the Exception to the Designated Operations Exclusion applies to the claims in the Underlying Lawsuit.

In deciding whether an insurer has a duty to defend, the Court must follow the "eight-corners rule" that provides that the duty to defend is determined by the plaintiff's pleadings in the underlying lawsuit.  *See Zurich*, 268 S.W.3d at 491; *see also LCS Corrections Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 668 (5th Cir. 2015); *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015).  If the underlying complaint "potentially includes a covered claim, the insurer must defend the entire suit."  *Id.* (quoting *Zurich*, 268 S.W.3d at 491).

If the complaint in the underlying lawsuit clearly alleges facts that would exclude coverage under the insurance policy, there is no duty to defend. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)).  If, however, it is unclear from the complaint in the underlying lawsuit whether the factual allegations fall within the policy's coverage, the "insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy."[4] *See Zurich*, 268 S.W.3d at 491; *Gore Design Completions,*

---

[4]  The Fifth Circuit's ruling in *Fed. Ins. Co. v. Northfield Ins. Co.*, 837 F.3d 548 (5th Cir. 2016), reinforces this doctrine.  In *Federal*, ExxonMobil and Bryan Wagner were sued for damages in Louisiana.  ExxonMobil separately sued Wagner in Texas for breach of a contract of assignment in which Wagner promised ExxonMobil indemnity for damages arising from the Louisiana properties (the "ExxonMobil suit"). *Federal*, 837 F.3d at 550-51.  Wagner was insured by both Federal and Northfield.  Northfield asserted a Pollution Endorsement as an exclusion to coverage under its policy as applied to the breach of contract claims in the ExxonMobil suit. *See id.* at 551.  Federal filed suit in federal court seeking a declaration that Northfield owed a duty to defend Wagner in the ExxonMobil suit. *See id.* at 551.  The petition filed by ExxonMobil in the Texas state court action contained only the most general reference to the claims in the Louisiana litigation, calling them claims for "environmental damage," and did not attach any of the Louisiana petitions. *See id.* at 553.  The Fifth Circuit held, on the basis of the eight-corners rule, that Northfield had a duty to defend Wagner in the Texas ExxonMobil suit because "environmental damage" could potentially include claims based on non-pollution related damage to vegetation or wildlife habitat, claims that would not be excluded under the Pollution Endorsement in the Northfield policy. *See id.* at 554.

In the coverage case at bar, the Court has before it – and is bound to consider the specific allegations in – the Underlying Lawsuit petition.  Here, the Fourth Amended Petition in the Underlying Lawsuit is one of the two documents on which the Court (continued...)

*Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008).  The Court *may not*, however, "(1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." *Test Masters*, 791 F.3d at 564 (quoting *Gore Design*, 539 F.3d at 369).

Although courts are generally limited to the factual allegations in the pleadings and the terms of the policy when deciding whether the insurer owes its insured a duty to defend, courts may also consider reasonable inferences that may be drawn from the factual allegations in the pleadings.[5]  *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 645 (Tex. 2005); *Gen. Star Indem. Co. v. Gulf Coast Marine Assoc., Inc.*, 252

---

[4]    (...continued)
must base its eight-corners analysis for coverage purposes. There is no need to rely on a party's broad and general description of claims asserted in twice-removed underlying litigation.

[5]    In the *Richards* case, a 10-year-old boy died in an ATV accident while staying at his grandparents' house.  *See Richards*, 2019 WL 4267354, at *1.  The boy's mother sued the grandparents (the Richards), who had an insurance policy issued by State Farm.  *See id.*  The State Farm policy contained two potentially applicable exclusions.  The first excluded "coverage for bodily injury arising from the use of an ATV while off the Richards' premises."  *See id.*  The state court petition did not state whether the accident occurred on or off the grandparents' property.  The second exclusion excluded coverage for bodily injury to the insured, defined to include relatives "if residents of your household."  *See id.* at 2.  There were no allegations in the state court petition that the boy was or was not a resident of the Richards' household.  Neither the district court nor the Fifth Circuit inferred facts not in the state court petition to answer these two coverage issues.  Instead, the Fifth Circuit certified to the Texas Supreme Court the issue regarding whether there is a recognized exception to the "eight corners" rule that would allow consideration of extrinsic evidence.

S.W.3d 450, 456 (Tex. App. – Houston [14th Dist.] 2008, review denied) (noting that the "eight corners rule does not require us to ignore those inferences logically flowing from the facts alleged in the petition").

## III.   ANALYSIS

### A.   Treasures and Brannen as Additional Insureds

Maxum did not contest, and Magistrate Judge Palermo recommended, a ruling that Treasures and Brannen are additional insureds under the Policy.  Maxum does not object to this aspect of the R&R, and the Court finds it well supported legally and factually.  As a result, the Court adopts the Magistrate Judge's recommended ruling that Treasures and Brannen are additional insureds under the Policy.

### B.   Applicability of Exclusion in Policy

As noted above, the Policy contains a Designated Operations Exclusion that excludes coverage under the Policy for injuries arising out of "any work at or in bars, restaurants, taverns or any other establishments selling or providing alcoholic beverages." *See* Policy, ECF p. 48.  The Magistrate Judge recommended a ruling that this Exclusion applies because the injuries alleged in the Underlying Lawsuit arose out of the defendants' work in an establishment selling alcoholic beverages.  No party filed an Objection to this recommended ruling.  The Court finds the recommendation to be legally and factually sound and, therefore, adopts the R&R to the extent it

recommends a ruling that the Designated Operations Exclusion in the Policy applies to the claims in the Underlying Lawsuit and would exclude coverage under the Policy.

### C.   <u>Applicability of Exception to Exclusion</u>

The Designated Operations Exclusion contains an Exception for the operation of "parking lot security at Gentlemen's Clubs" such as Treasures.  *See id.*  The Exception is clear and specific, relating only to "parking lot security."  Therefore, if O'Neill alleges bodily injury or personal injury arising out of the operation of "parking lot security" at Treasures, then the Designated Operations Exclusion would not apply and Maxum's Policy would provide coverage for the Underlying Lawsuit. Maxum objects to the Magistrate Judge's recommendation regarding the applicability of the Exception because (1) there are no allegations in the Underlying Lawsuit that raise a reasonable inference that the operation of "parking lot security" was involved, and (2) there are no allegations that any of O'Neill's injuries arose out of the operation of "parking lot security."  Each of the objections is well-taken, and both are sustained.

***Parking Lot Security Operations.*–** Maxum argues that the Exception does not apply because there are no allegations in the Underlying Lawsuit from which one could reasonably infer that parking lot security operations were involved in the September 2017 incident.  O'Neill has filed several petitions in state court; indeed, the most recent is the Fourth Amended Petition.  O'Neill alleges in this operative pleading

that he was assaulted and handcuffed while inside Treasures.  *See* Fourth Amended

Petition, p. 4.  He alleges that, while he was still handcuffed, Global personnel "took

him outside to wait for the police."  *See id.*  The Magistrate Judge construes this

allegation to create a reasonable inference that waiting "outside" Treasures for the

police to arrive "could only have occurred on or adjacent to the parking lot."[6]  This

assumption ignores equally reasonable inferences that O'Neill waited with Global

personnel on a sidewalk or other area immediately outside the Treasures doorway or,

indeed, anywhere outside the building other than in a parking lot.  Although the live

pleading in the Underlying Lawsuit is O'Neill's **Fourth** Amended Petition, it contains

no allegations or reference to a parking lot at Treasures.  If O'Neill had been taken to

a parking lot, he could easily (and would likely) have said so in the detailed Fourth

Amended Petition.  Yet there are no allegations, either direct or through a reasonable

inference, that O'Neill was taken to a parking lot.  Consequently, absent an allegation

that O'Neill was taken to a parking lot over which Global had security responsibilities,

---

[6]      R&R, pp. 18-19.  The Court does not adopt the Magistrate Judge's comments at page
16 of the R&R that the term "parking lot" includes areas that are "adjacent to" a
parking lot.

there is no allegation of any actions constituting operation of "parking lot security," and the Exception does not apply.[7]

**"Arising Out of" Parking Lot Security Operations.–** Maxum argues that even if the allegations in the Fourth Amended Complaint were construed to allow an inference that O'Neill was taken to a parking lot for which Global provided security, the injuries he alleges did not arise out of the operation of parking lot security. Maxum is correct that O'Neill does not allege that any of his injuries arose out of parking lot security operations.

O'Neill alleges that the injury to his eye, the subject of Count 1 - Infliction of Bodily Injury, occurred when he was struck by Brannen while inside Treasures.

O'Neill alleges that the false imprisonment asserted in Count 2 occurred when he was pinned on the ground and handcuffed, events that he alleges occurred inside Treasures.  *See id.* at 4 (alleging that, while inside Treasures, Brannen knocked him to the ground, got on top of him, and beat him, after which Global personnel handcuffed him).  O'Neill alleges that the injuries resulting from the false

---

[7]    The Court does not adopt the Magistrate Judge's recommendation at page 16 of the R&R that "parking lot security operations" would include standing outside with an individual, who was handcuffed while inside the club, waiting for the police to arrive, particularly where the police were summoned at that individual's request.

imprisonment were the "shattered eye socket and broken facial bone," each of which were alleged to have been caused while O'Neill was inside Treasures.  *See id.* at 5.

In connection with the malicious criminal prosecution claim asserted in Count 3 of the Fourth Amended Complaint in the Underlying Lawsuit, O'Neill alleges that the malicious prosecution arose after the police "went to talk to Brannen" and, at Brannen's request, O'Neill was charged with "theft of service."  *See id.* at 6. Regarding his damages, O'Neill alleges that he was detained in jail for three days and suffered "the following damages:  harm to his reputation, emotional distress, and cost of defense."  *See id.*  These injuries are "personal injuries" as defined in the Policy. *See* Policy, ECF p. 31 (defining "personal injury" to include injury arising out of malicious prosecution).  There are no allegations, however, that O'Neill's injuries from the alleged malicious prosecution arose out of the operation of parking lot security.  Initially, as noted above, there are no allegations that raise a reasonable inference that any conduct or injury occurred in a parking lot.  Instead, O'Neill alleges that Global personnel took him outside and waited with him until the police arrived. *See* Fourth Amended Petition, at 4.  These allegations do not allow a reasonable inference that Global personnel's allegedly wrongful acts were in the course of providing security ***for a parking lot*** when they took O'Neill from inside Treasures "outside" to wait with him for the police to arrive.

In the Negligence (Count 4) claim in the Underlying Lawsuit, O'Neill alleges a breach of the duty "to protect him from harm while inside" Treasures.  *See id.* at 7. O'Neill does not allege that he suffered an injury arising from negligent provision of parking lot security operations.

In the Negligent Hiring (Count 5) claim, O'Neill alleges that he suffered bodily injury and personal injury due to the negligent hiring of "employees who restrained and falsely imprisoned" him.  *See id.*  As discussed above regarding the false imprisonment claim, there are no allegations that any of O'Neill's injuries arose out of Global's parking lot security operations.

The Texas Deceptive Trade Practices Act (Count 7[8]) and the fraud (Count 8) claims are based exclusively on conduct that O'Neill alleges occurred inside Treasures in connection with the dispute regarding the price of the champagne.  *See id.* at 8-9. The allegations cannot reasonably be interpreted to assert injury arising out of parking lot security operations.

The Exception to the Designated Operations Exclusion applies only to parking lot security operations at Treasures, and none of the bodily or personal injuries to O'Neill are alleged to have arisen out of such operations.  As a result, the Exception

---

[8]     Count 6 in the Fourth Amended Petition is an assertion of vicarious liability and respondeat superior.  *See* Fourth Amended Petition, p. 8.

does not apply, leaving the Exclusion in place to exclude coverage under Maxum's Policy to Global.

### D. Remaining Issues Addressed in the R&R

In addition to its request for a declaration that (1) Treasures and Brannen are additional insureds under the Policy and (2) that Maxum has a duty to defend Treasures and Brannen in the Underlying Lawsuit, Princeton asserts an equitable contribution claim seeking reimbursement from Maxum of its defense costs incurred in defending Treasures and Brannen in the Underlying Lawsuit.[9]  Because this Court holds that Maxum does not owe a duty to defend in the Underlying Lawsuit, Princeton is not entitled to judgment on its contribution claim.

In addition to Maxum's Motion for Summary Judgment on all claims asserted against it by Princeton, Maxum seeks summary judgment on Global's crossclaims seeking indemnity and reimbursement for defense costs in the Underlying Lawsuit. The Magistrate Judge recommended granting Maxum's motion for summary judgment regarding its duty to defend Global, and recommended denying without prejudice as premature Maxum's motion for summary judgment regarding its duty to indemnify

---

[9]    Princeton also asserts an equitable subrogation claim against Global that was not the subject of any of the motions addressed in the R&R.

Global.  Global did not file any objections to that recommendation.  This aspect of the R&R is well-reasoned and is adopted by this Court.

## IV.   <u>CONCLUSION AND ORDER</u>

Based on the foregoing, the Court adopts the Magistrate Judge's R&R to the extent it recommends a ruling that Treasures and Brannen are additional insureds under the Policy.  The Court further adopts the R&R to the extent it recommends a ruling that the Designated Operations Exclusion in the Policy applies to the claims in the Underlying Lawsuit.  Additionally, the Court adopts the R&R to the extent it recommends granting Maxum's Motion for Summary Judgment on Global's crossclaim for defense costs for the Underlying Lawsuit and for this lawsuit, and to the extent it recommends denying without prejudice as premature Maxum's Motion for Summary Judgment on Global's crossclaim for indemnity.

The Court does not adopt the recommendation that the Exception to the Exclusion applies such that Maxum owes a duty to defend Treasures and Brannen in the Underlying Lawsuit.  There are no allegations in the Underlying Lawsuit that could be reasonably construed to allege an injury arising out of Global's parking lot security operations.  As a result, the Exception does not apply and the Exclusion precludes coverage for the allegations in the Underlying Lawsuit.  It is hereby

**ORDERED** that the Magistrate Judge's Report and Recommendation [Doc. # 38] is **ADOPTED** in part as set forth herein.  It is further

**ORDERED** that Princeton's Rule 12(c) Motion for Judgment on the Pleadings [Doc. # 19] is **DENIED**.  It is further

**ORDERED** that Maxum's Motion for Summary Judgment [Doc. # 22] on Princeton's claims against it is **GRANTED**.  It is further

**ORDERED** that Maxum's Motion for Summary Judgment on Global's Crossclaims [Doc. # 24] is **GRANTED** as to the duty to defend and **DENIED AS PREMATURE** as to the duty to indemnify.

The case remains referred to Magistrate Judge Palermo pursuant to the March 5, 2019 Order.

SIGNED at Houston, Texas, this **24th** day of **September, 2019**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE